UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PAMELA JAROSE, executor of the ESTATE OF JOHN R. BRAUN,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF HUMBOLDT, a subdivision of the State of California,<br><br>Defendant. | Case No: C 18-07383 SBA<br><br>**ORDER DENYING MOTION TO MODIFY THE SCHEDULING ORDER AND FOR LEAVE TO AMEND THE PLEADINGS**<br><br>Dkt. 31 |

Plaintiff and Counter-Defendant Pamela Jarose, executor of the Estate of John R. Braun (the "Estate"), and Defendant and Counter-Plaintiff County of Humboldt (the "County") sue each other to assign liability and/or recover costs for hazardous waste cleanup at certain real property located in Eureka, California. The parties bring claims under the Comprehensive Environmental Reponse, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq., and California's Hazardous Substances Account Act ("HSAA"), Cal. Health & Safety Code § 25300, et seq., as well as related causes of action. Presently before the Court is the Estate's Motion to Modify the Scheduling Order and for Leave to Amend the Pleadings. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I. BACKGROUND

## A. FACTUAL BACKGROUND

The instant action concerns hazardous waste contamination at and around certain real property located at 411 J Street, Eureka, California (the "Subject Property"). First Am. Compl. ("FAC") ¶ 1, Dkt. 28. John R. Braun ("Braun") previously owned the Subject Property. Countercl. & Cross-Cl. ("Countercl.") ¶ 2, Dkt. 14.[1] Upon Braun's death in January 2018, Pamela Jarose ("Jarose") became executor of his Estate. Id. ¶ 2; FAC ¶ 6.

On or about July 23, 1993, a Judgment on Stipulation for Settlement and Entry of Judgment ("Judgment") was entered in County of Humboldt v. John R. Braun, Superior Court of California, County of Humboldt, Case No. 93DR0195, approving the County's condemnation of the Subject Property and full compensation to Braun in the amount of $1,467,190 for the taking. FAC ¶ 9 & Ex. A (Judgment) at 1. The Judgment also sets forth the "mutual rights, duties, and obligations" of the parties. J. ¶ 4 & Ex. A.

Among other things, the Judgment holds Braun responsible for "all costs of hazardous waste cleanup originating on [the Subject Property] …." J., Ex. A ¶ 4. This obligation terminates upon certification by the Northcoast Water Quality Control Board ("Board") of (a) full compliance with an approved remediation plan and (b) satisfaction of applicable regulations such that additional monitoring and/or cleanup is no longer required. Id. ¶ 5. Braun was to complete the cleanup by January 1, 1994. Id. ¶ 6. If not completed by that date, the County has the right to complete any remaining cleanup and seek reimbursement from Braun for reasonable costs attendant thereto. Id. ¶¶ 10-11.

Regarding compensation, the Judgment requires the County to deposit $1,209,690 into an escrow account for disbursement to Braun. Id. ¶¶ 1-2. It also requires the County to deposit the remaining $257,500 into an investment account. Id. ¶ 13. Pursuant to certain terms, the Judgment authorizes withdrawals from the investment account to pay expenses associated with the cleanup of the Subject Property. Id.

---

[1] Although the County characterizes its pleading as a "Counterclaim and Crossclaim," it alleges claims solely against Plaintiff.

### 1. The Estate's Allegations

The County courthouse occupies property adjacent to the Subject Property. FAC ¶¶ 12-13. At all times relevant to this dispute, the County has "owned, operated, maintained, supervised, and/or controlled" a dewatering sump system in the courthouse basement. Id. ¶ 13. The Estate alleges that operation of the system has transported hazardous substances to previously uncontaminated areas. Id. ¶ 15. Specifically, the sump system has "illegally released, discharged, and/or disposed of contaminated water to and from the storm drain system," which "flows toward Humboldt Bay without pretreatment." Id. ¶¶ 19-20.

The Estate claims that the County's operation of the courthouse sump system has "exacerbated the contamination that was not foreseeable to Plaintiff, and any alleged responsibility for such conduct was not intended to be included in the scope of the Judgment." Id. ¶ 23. According to the Estate, "the County's negligence has interfered with the terms of the Judgment and the cost to delineate and remediate the contamination at issue has increased." Id.

### 2. The County's Allegations

The County alleges Braun partially performed or made promises to perform his obligations under the Judgment but never fully satisfied the same. Countercl. ¶¶ 10, 13. Although the Judgment contemplates completion of the cleanup by 1994, the County permitted Braun "to extend the cleanup period in a manner that was cost efficient for [him] as long as there was not any threat of action from the Board." Id. ¶ 10. In May 2018, the Board issued a directive to resume monitoring and corrective action at the Subject Property. Id. ¶ 12. In July 2018, the County issued a formal written demand to the Estate for cleanup of the Subject Property. Id. ¶ 14. The Estate has not accepted the demand. Id.

In addition to contaminating the Subject Property, "the hazardous waste from the Subject Property has been, and is, migrating towards Humboldt Bay." Id. ¶ 18. This "groundwater plume" has contaminated adjacent property, including the courthouse. Id. The County acknowledges that it operates a "passive" sump system at the courthouse and that water received thereby is contaminated by the plume. Id. ¶ 19. However, the County

claims its sump system "does not actively extract contaminated groundwater, alter or exacerbate migration of the plume, or contribute to groundwater or soil contamination in surrounding properties." Id. ¶ 20. The County "has been forced to incur the expense for design, permitting, and installation of a treatment system for sump discharge." Id.

### B. PROCEDURAL BACKGROUND

On December 7, 2018, the Estate filed a Complaint against the County, alleging causes of action for: (1) cost recovery under CERCLA; (2) contribution under CERCLA; and (3) declaratory relief. Dkt. 1. The County answered on December 21, 2018. Dkt. 13. It also filed a Counterclaim, alleging causes of action for: (1) breach of written contract; (2) implied contractual indemnity; (3) contribution under HSAA; (4) declaratory relief under HSAA; (5) declaratory relief; (6) public nuisance; (7) private nuisance; (8) cost recovery under CERCLA; and (9) contribution under CERCLA. Dkt. 14. The Estate answered the Counterclaim on January 10, 2019. Dk. 15.

In the meantime, on December 17, 2018, the Estate submitted a tort claim to the County regarding this dispute. The County denied the claim on January 8, 2019. On February 6, 2019, the Estate filed a Motion for Leave to File a First Amended Complaint, wherein it sought to add causes of action for: (1) Contribution and Indemnity Pursuant to HSAA; (2) Continuing Public Nuisance; (3) Dangerous Condition of Public Property; and (4) Equitable Indemnity and Contribution. Dkt. 16. The Court granted the Estate's motion. Dkt. 27. On June 5, 2019, the Estate filed the operative First Amended Complaint. Dkt. 28. The County answered the First Amended Complaint on June 17, 2019. Dkt. 30.

On May 29, 2019, the Court entered an Order for Pretrial Preparation, setting a deadline of June 28, 2019, for the joinder of parties and to amend the pleadings. Dkt. 26. On August 22, 2019, the Estate deposed the County's Rule 30(b)(6) witness, Hank Seemann ("Seemann"). Monroe Decl. ¶ 5, Dkt. 31-2. At the deposition, Seemann testified that: (1) to his knowledge, the County has not obtained a permit to discharge water from the courthouse sump system; and (2) the County released to Braun the funds set aside under the Judgment for cleanup costs. On September 16, 2019, the Estate served on the County a 60-

day notice of intent to commence litigation under the Clean Water Act ("CWA"), 33 U.S.C. § 1311, as required by 42 U.S.C. § 1365. Id. ¶ 6.

On November 6, 2019, the Estate filed the instant Motion to Modify the Scheduling Order and for Leave to Amend the Pleadings. Dkt. 31-1. It seeks leave to file a Second Amended Complaint to add: (1) Jarose as a plaintiff in her individual capacity; and (2) a claim against the County for violation of the CWA. The Estate also seeks leave to file an Amended Answer to the Counterclaim to add an affirmative defense of accord and satisfaction. The County filed separate opposition briefs regarding the filing of an Amended Answer to the Counterclaim ("Opp'n to Am. Answer"), Dkt. 35, and a Second Amended Complaint ("Opp'n to Second Am. Compl."), Dkt. 36. The Estate filed a single Reply. Dkt. 40. The motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

A motion for leave to amend the pleadings generally is governed by Federal Rule of Civil Procedure 15(a)(2), which provides that a court should "freely give leave when justice so requires."[2] However, where, as here, a court has entered a pretrial scheduling order that establishes a deadline for amending the pleadings and that deadline has passed, a party's ability to amend the pleadings is governed by Rule 16(b). Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000) (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992)).

Pursuant to Federal Rule of Civil Procedure 16(b)(3)(A), a court must enter a pretrial scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file motions. "A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Johnson, 975 F.2d

---

[2] Five factors govern the Court's determination as to whether leave to amend is warranted under Rule 15(a): (1) undue delay; (2) bad faith or dilatory motive; (3) prejudice to the opposing party; (4) futility of amendment; and (5) repeated failure to cure deficiencies by amendments previously allowed. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Of these factors, prejudice "carries the greatest weight." Id. "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a *presumption* . . . in favor of granting leave to amend." Id. (emphasis in original).

at 610 (quotations and citation omitted).  Once entered, a scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

"Good cause" may be shown where pretrial deadlines "'cannot reasonably be met despite the diligence of the party seeking the extension.'"  Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at 609).  Although a court may consider any prejudice to the party opposing modification of the scheduling order, the "good cause" standard focuses on the diligence of the moving party.  In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 737 (9th Cir. 2013) (citing Johnson, 975 F.2d at 609).  If the party seeking to modify the scheduling order has not been diligent, the court's inquiry should end and the motion should be denied.  Zivkovic, 302 F.3d at 1087 (citing Johnson, 975 F.2d at 609).

## III. DISCUSSION

The Estate moves for leave to file a Second Amended Complaint as well as an Amended Answer to the County's Counterclaim.

### A. PROPOSED SECOND AMENDED COMPLAINT

The Estate seeks to add Jarose as a plaintiff in her individual capacity and to add a claim against the County for violation of the CWA.  The request is based on information purportedly "discovered for the first time" at Seemann's deposition, i.e., that the County has not obtained a permit to discharge water from the courthouse sump system.  Mot. at 6.  The Estate asserts that the discharge of water into Humboldt Bay without a National Pollution Discharge Elimination System ("NPDES") permit violates the CWA, thus giving rise to a cause of action thereunder.  Although not discussed in the motion, the Estate seeks to add Jarose as a plaintiff in her individual capacity to avoid any challenge to its standing to bring a citizen suit to enforce the CWA.  See Reply at 6.  According to the Estate, it could not have sought leave to add the proposed claim for violation of the CWA prior to the deadline to amend the pleadings "because [the fact that the County operates its sump system without an NPDES permit] was unknown to [it] at that time."  Mot. at 6.

The County opposes the motion on several grounds. As an initial matter, it argues that the Estate has not demonstrated due diligence in pursuing the CWA claim, and thus, has failed to establish good cause to modify the scheduling order. The Court agrees.[3]

The Estate has not shown that the deadline to amend the pleadings could not reasonably have been met despite its diligence. At this stage of the proceedings—where the Estate has already been granted leave to file a first amended complaint and a pretrial schedule has been entered—it is incumbent upon the Estate to develop whatever facts may be necessary to pursue potential claims of which it has notice. A party cannot simply wait for facts to present themselves in due course. Here, the Estate has always alleged that the County illegally discharges water from the sump system into the storm drains and Humboldt Bay. Comp. ¶¶ 16-17 ("Plaintiff is informed and believes, and on that basis alleges that the County illegally released, discharged, and/or disposed of contaminated water to and from the storm drain system[,]" and that "the storm drain system flows toward Humboldt Bay without pretreatment."); FAC ¶¶ 19-20 (same). The Estate was therefore on inquiry notice of the newly proposed CWA claim since at least December 2018.

The Estate argues it was under no obligation to "prove a negative" by verifying— prior to taking Seemann's deposition—that the County has no NPDES permit. Reply at 4. If such information is available, however, that is indeed the Estate's obligation. See Johnson, 975 F.2d at 610 ("The burden was upon [Plaintiff] to prosecute his case properly."). As to the availability of the information testified to by Seemann, the County asserts that "[its] permit status would be a matter of public record." Opp'n to Second Am. Compl. at 4. The Estate claims otherwise, asserting that "[t]here is no database listing of permit-holders relating to point source discharges[.]" Reply at 4. The Estate is incorrect. The Court takes judicial notice of the fact that NPDES permit data is publicly available on

---

[3] The County further argues that, even if good cause were shown, leave to amend should be denied because the proposed amendment is futile and would prejudice the County. Given that the Court finds no showing of good cause, it does not reach the County's other arguments. Consequently, the County's request for judicial notice—which goes to the issue of futility—is DENIED as moot. Dkt. 36-1.

the websites of both the EPA and the California Water Board.[4]  Thus, the Court finds that the Estate's ignorance as to the County's permit status was attributable "entirely to [the Estate's] own lack of diligence."  Opp'n to Second Am. Compl. at 4.[5]

Because the Estate has not demonstrated due diligence, the Court does not address the County's arguments regarding futility and prejudice.  The Court notes, however, that a citizen suit for violations of the CWA differs in nature from the instant action and that the proposed CWA claim is not essential to the resolution of the instant dispute.  In other words, whether the County is violating or has violated the CWA does not help to assign or apportion liability between the County and the Estate as to the cleanup of the Subject Property and any plume originating therefrom.

In view of the foregoing, leave to file a Second Amended Complaint is DENIED.

### B. PROPOSED AMENDED ANSWER

The Estate seeks to add an affirmative defense of accord and satisfaction.  The request is based on information purportedly "discovered for the first time" at Seemann's deposition, i.e., that the County released to Braun the funds set aside under the Judgment for cleanup costs.  Mot. at 8.  The Estate asserts that the defense is "appropriately raised under these recently discovered facts."  Id.  According to the Estate, "Jarose . . . has limited knowledge of the transactions between the County and Mr. Braun during his life," and thus,

---

[4] The EPA's website states that users can utilize the Enforcement and Compliance History Online ("ECHO") site to "search by your location to find NPDES permitted facilities near you."  See https://www.epa.gov/npdes/npdes-permit-basics.  An embedded link directs users to https://echo.epa.gov/.  The California Water Boards' website states that users can "[s]earch for NPDES permits" using its Interactive Regulated Facilities Report.  See https://www.waterboards.ca.gov/water_issues/programs/npdes/permit_serach.html.  Pursuant to Federal Rule of Evidence 201, information made publicly available on the website of a government agency is subject to judicial notice.  See Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information made publicly available on the websites of two school districts); U.S. ex rel. Modglin v. DJO Glob. Inc., 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), aff'd sub nom. United States v. DJO Glob., Inc., 678 F. App'x 594 (9th Cir. 2017) (taking judicial notice of documents made available on the websites of the FDA, CMS, SEC, and Medi-Cal).

[5] The Court notes that Plaintiff could have also propounded written discovery regarding the County's permit status to discover this information.

**1** it could not have sought leave to add the defense prior to the deadline to amend the

**2** pleadings "because the information was unknown to Plaintiff at that time." Id.

**3** The County opposes the motion, arguing that Plaintiff has not shown good cause.

**4** The County notes that the motion is "entirely lacking in evidence about what, if anything,

**5** Ms. Jarose knew about retained funds, release of retained funds and/or whether she

**6** possesses any records of John R. Braun on the subject." Opp'n to Am. Answer at 3. The

**7** County avers that "[e]xtensive correspondence exists over the period 1993-2018 between

**8** John R. Braun and the County and others including on the subject of retained funds, release

**9** of funds and substituting various forms of security." Horan Decl. ¶ 11, Dkt. 35-1. The

**10** County avers, "[o]n information and belief," that this correspondence "would be in the

**11** records of John R. Braun." Id. According to the County, without information as to what

**12** the Estate knew or had access to in Braun's records, the Court cannot evaluate whether it

**13** exercised due diligence in discovering the proposed defense. Opp'n to Am. Answer at 3.

**14** The Estate counters that the transaction in question was between the County and

**15** Braun, who is now deceased. Reply at 3. The Estate asserts that the issue "came up" at

**16** Seemann's deposition, and that, according to his testimony, not even the County could

**17** confirm with certainty the circumstances under which the funds had been released. Id. The

**18** Estate notes that it conducted significant third-party discovery "to obtain the historical

**19** records, invoices and other documents relating to the claims and defenses in this case." Id.

**20** at 3 n.1. It contends, however, that "[e]ven if [this information] were part of the

**21** voluminous historical records, there was no reason for Plaintiff to suspect the defense until

**22** it was raised and confirmed at deposition." Id. at 3.

**23** The Court finds that the Estate has not demonstrated due diligence in raising the

**24** defense of accord and satisfaction. The Estate notes that it conducted discovery to obtain

**25** historical records and summarily asserts that those records are "voluminous." However, the

**26** Estate provides no detail as to: (a) the approximate number of documents; (b) its efforts, if

**27** any, to review and search the records; or (c) whether information regarding the released

**28** funds is actually contained therein. In fact, even though the County raises the issue in its

opposition, the Estate provides no information whatsoever about the information known or available to it prior to Seemann's deposition.  The Estate relies entirely on its purported diligence in moving to add the defense once information came to light, but it makes no showing as to its efforts to pursue available defenses, including the defense of accord and satisfaction, prior to the deposition.

In view of the foregoing, leave to file an Amended Answer is DENIED.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT the Motion to Modify the Scheduling Order and for Leave to Amend the Pleadings is DENIED.  This Order terminates Docket 31.[6]

IT IS SO ORDERED.

Dated:  3/2/2020

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge

---

[6] The Estate notes that the County has raised the issue of staying the action.  Reply at 5.  To date, no motion has been made seeking a stay.  In the event that the pretrial schedule is later vacated because of a stay, the matter of amending the pleadings may be revisited.